IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PAT JULIANO                   :        CIVIL ACTION
                              :
          v.                  :
                              :
UNIVEST CORPORATION OF        :
PENNSYLVANIA                  :        NO. 13-6230

MEMORANDUM

Bartle, J.                                      June 26, 2014

          Plaintiff Pat Juliano, a 66-year old woman, has sued
her former employer for age and gender discrimination under the
Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621,
Title VII of the Civil Rights Act of 1964 ("Title VII"), 42
U.S.C. 2000e, and the Pennsylvania Human Relations Act ("PHRA"),
43 Pa. Cons. Stat. Ann. § 451.  Plaintiff was a Help Desk
Specialist at Univest Corporation of Pennsylvania ("Univest")
before she was terminated on January 15, 2013.

                              I.

          The defendant has moved for summary judgment under Rule
56 of the Federal Rules of Civil Procedure.  Summary judgment is
appropriate if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine dispute as to
any material fact and that the moving party is entitled to
judgment as a matter of law.  See Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986).  A dispute is genuine only if there is a

sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law.  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The gravamen of defendant's motion is a release of rights signed by the plaintiff on January 23, 2013.  Plaintiff counters that the release is not enforceable.

II.

The following facts are undisputed.  As noted above, Juliano was employed by Univest as a Help Desk Specialist.  On January 15, 2013, Juliano was called to a meeting with Theresa Schwartzer ("Schwartzer"), Univest's Human Resources Director, and Eric Conner, Univest's Chief Technology Officer.  Juliano was told that she was being laid off as part of a company reorganization and was provided with a proposed release of rights.  The release states, in relevant parts:

> **This is an important legal document. Please do not sign it until you have thoroughly reviewed it and understand its terms and effect and unless you do so voluntarily... You have forty-five days from your Separation Date... to consider the terms of this Agreement... In addition, should you choose to sign this Agreement, you are entitled to revoke your acceptance at any time within seven (7) days after signing it... Lastly, you have the right to consult with an attorney before signing this Agreement.**

Your employment with the Company will conclude at the close of business on January 15, 2013...

You will receive Separation Pay of **eight** weeks payable in a lump sum minus applicable tax withholding within 15 days following receipt of this signed agreement and provided there is no revocation.  The total gross amount of Separation Pay will be **$7002.00.**

....

In consideration of the promises of Univest as set forth in this Agreement, and with the intent to be bound legally, you agree to irrevocably **RELEASE AND FOREVER DISCHARGE** Univest Corporation... from and with respect to any manner of actions, suits, debts, claims, demands whatsoever in law or equity arising out of or in any way relating to your employment with Univest... including, but not limited to... any and all Claims arising under the laws of any federal, state, or local jurisdiction, including, but not limited to, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991... the Age Discrimination in Employment Act and the Older Workers Benefit Protection Act, the Pennsylvania Human Relations Act... Nothing in this paragraph shall be read as waiver of any vested rights in any savings or pension plan, for unemployment compensation benefits, for benefits under COBRA or for enforcement of this agreement.

....

You acknowledge that no promise, other than the promises in this Agreement, have been made to you and that in signing this Agreement you are not relying upon any statement or representation made by or on behalf of the Releasees and each or any of them concerning... the Agreement or concerning any other thing or matter.

....

-3-

You acknowledge that you have been
informed of your right to consult with legal
counsel and have been encouraged to do so.

....

You acknowledge that you have been given
a period of forty-five (45) days, starting on
your Separation Date... to consider the terms
of this Agreement.

(emphasis in original).  Juliano understood that if she did not
sign the release, she would not receive severance pay.  Juliano
was also given Schwartzer's business card before she left the
meeting.

Following the January 15 meeting, Juliano discussed the
release with her financial advisor, Patricia Nelson, among
others.  Knowing that she would qualify for Medicare upon turning
65 in March, Juliano did not make any inquiries concerning
medical coverage continuation.  Juliano told her financial
advisor that she expected to receive unemployment compensation
and discussed how she would manage her finances when her income
consisted solely of severance pay and unemployment compensation.

Juliano subsequently called Schwartzer to inquire about
the form of the severance payment.  Schwartzer told Juliano it
would be paid in a lump sum.  Juliano also contacted Julie
Sheehan, a Univest Human Resources representative, regarding
benefits.

On January 18, 2013, Juliano applied for unemployment
benefits.  Univest did not contest her application.  In 2013,
Juliano's unemployment benefits totaled $16,556.

-4-

On January 23, 2013, Juliano returned the signed release to Univest by handing it to the receptionist in Univest's Human Resources department.  Before signing the release, Juliano read it in its entirety.  On January 31, 2013, Univest issued Juliano a net wage payment in the amount of $4,373.33 which was deposited into her personal bank account.

Juliano filed a charge against Univest with the Equal Employment Opportunity Commission ("EEOC") on July 3, 2013 alleging gender and age discrimination.  The EEOC issued a Dismissal and Notice of Rights on July 25, 2013.  This lawsuit followed.

III.

In its motion for summary judgment Univest argues that it is entitled to judgment as a matter of law on plaintiff's discrimination claims because she waived those claims when she signed a release after being terminated.  Plaintiff counters the release is invalid because she signed it under duress.  Employees may waive employment discrimination claims against their employers as long as the release is made knowingly and voluntarily.  To determine whether a release is valid, we use a totality of the circumstances test.  To aid in their analysis, courts may consider the following factors:

> (1) the clarity and specificity of the
> release language; (2) the plaintiff's
> education and business experience; (3) the
> amount of time plaintiff had for deliberation
> about the release before signing it; (4)
> whether plaintiff knew or should have known
> his rights upon execution of the release; (5)

> whether plaintiff was encouraged to seek, or
> in fact received the benefit of counsel; (6)
> whether there was an opportunity for
> negotiation of the terms of the Agreement;
> and (7) whether the consideration given in
> exchange for the waiver and accepted by the
> employee exceeds the benefits to which the
> employee was already entitled by contract or
> law. [Courts] may also consider whether there
> is evidence of fraud or undue influence, or
> whether enforcement of the agreement would be
> against the public interest.

Cuchara v. Gai-Tronics Corp., 129 F. App'x 728, 731 (3d Cir.
2005) (internal quotation marks and citations omitted).  We will
consider each factor in turn.

First, the release language contained in the Agreement
is clear and specific.  It states that plaintiff is waiving her
rights under a number of statutes and laws, including the ADEA,
Title VII, and the PHRA.  It provides for a lump-sum severance
payment which plaintiff received within a week of signing the
release.  The release also provides that plaintiff had 45 days to
consider the release before signing it and the right to cancel it
at any time within seven days after signing it.  The release
further acknowledges that Juliano had been advised to consult
with an attorney or legal advisor.

Second, plaintiff is college-educated and has held
various technical support and customer service positions.  She
has worked for large corporations such as Comcast and Motorola in
addition to Univest.  There is no indication in the record that
Juliano is not an educated individual.

Regarding the third factor, the release specifically states that plaintiff had 45 days to consider the agreement before signing it. While plaintiff argues that Schwartzer did not tell her at the January 15, 2013 meeting that she had 45 days to consider the release, plaintiff admits she read the release before signing it. Moreover, plaintiff concedes that she waited eight days after receipt of the release to sign it and that she consulted with her financial advisor before doing so.

We find that the fourth factor also weighs in favor of the release's validity. Juliano admits she knew she was releasing claims when she signed the release in exchange for severance pay. The language of the release as to the specific claims waived by plaintiff is clear and unambiguous.

The fifth factor is likewise satisfied. The release states on the first page in bold typeface, "you have the right to consult with an attorney before signing this Agreement." The fact that Juliano did not consult with an attorney, but rather a financial advisor, does not compel us to rule in Juliano's favor. In Watsak v. Lehigh Valley Health Network, 342 F.3d 281 (2003), our Court of Appeals held that it was not dispositive that a plaintiff did not consult with counsel before signing a release for the release to be valid. Id. at 294-95.

The sixth factor also supports the validity of the release. Juliano acknowledges she was given Schwartzer's business card when she was terminated. She subsequently contacted Schwartzer to discuss the release as well as a human

-7-

resources representative at Univest to discuss benefits.  Juliano
has pointed to no evidence in the record indicating that she was
prevented from attempting to negotiate the terms of the
severance, although she apparently did not do so.

Juliano also received adequate consideration for her
release of rights.  Juliano concedes that she received eight
weeks' pay in a lump sum from Univest after she signed the
release.  Moreover, the release clearly states that Univest would
not contest Juliano's application for unemployment benefits.
Thus, we find that the seventh factor is satisfied.

Ultimately we must decide whether, based upon the
totality of the circumstances drawn from the record, Juliano's
release was knowing and voluntary.  While Juliano admits that she
read the release and consulted with a financial advisor before
signing it, she argues that she was under duress and thus that
the release should be invalidated.  Juliano contends that she was
under duress because she was concerned about meeting her
healthcare needs as she has diabetes and is insulin dependent.
Juliano's claim that she was under duress when she signed the
release does not invalidate it as a matter of law.  "Under
Pennsylvania law, absent a threat of actual bodily harm, there
can be no claim of duress 'where the contracting party is free to
consult with counsel.'"  Tubbs v. Merck & Co., No. 13-5992, 2014
U.S. Dist. LEXIS 82815 (E.D. Pa. Jun. 18, 2014) (citing Cuchara,
129 F. App'x at 731).  Moreover, in Wastak, our Court of Appeals
recognized that "the law is clear that the existence of financial

-8-

pressure to sign a waiver is insufficient to establish that it
was executed involuntarily."  342 F.3d at 294-95.

           Juliano also maintains that she felt pressured into
signing the release because she understood that if she did not
sign it, she would not receive unemployment compensation.  In her
deposition, plaintiff testified that Ms. Schwartzer "gave [her]
the impression that [she] would not get unemployment if [she] did
not sign [the release]."  Plaintiff did not state when deposed
that Ms. Schwartzer made any verbal representations to her
regarding unemployment benefits.  In a subsequent affidavit dated
April 17, 2014, plaintiff stated that after the January 15, 2013
termination meeting she "understood that in order to receive
Unemployment Compensation and the benefits as stated by
Schwartzer (eight weeks of pay, paid over the applicable pay
periods and with the month of February paid for my health
benefits), [she] needed to sign the release right away."  Even
assuming that this is not a sham affidavit, plaintiff does not
say that Schwartzer told her she would not receive unemployment
benefits if she did not sign the release.  See Jiminez v. All Am.
Rathskeller, Inc., 503 F.3d 247, 251 (3d Cir. 2007).  Even if
Schwartzer did represent to Juliano that she would not be
eligible for unemployment benefits if she did not sign the
release, plaintiff did not rely on such a representation.  Her
own deposition testimony establishes that she not only expressed
to her financial advisor that she expected to receive

unemployment benefits but also that she applied for those benefits several days before signing the release.

On the record before us, there is no genuine dispute of any material fact concerning the release's validity. Plaintiff's discrimination claims are thus barred. Accordingly, defendant's motion for summary judgment will be granted.